Okay, so I think the important thing to start with is, you know, there's two separate motions for 2004, and Mr. Choi didn't show up at all. He didn't reply. He ignored the court's notice for the 2004. And so throughout the motion, Mr. Choi didn't even appear or reply, and the court did deny my motion, but generally standard procedure is if there's nobody opposing, it should have been granted. And it's not like he didn't know he was a barred attorney, and he just chose to ignore the initial motion for 2004 in the bankruptcy court. And for me, in all my interactions with the bankruptcy court and, you know, from what I understand, standard procedure in all courts is if it's not opposed, then it should have been granted. That's not the standard procedure, sir. I mean, that's, there's a whole litany of, that's akin to what's called default, default judgment. And the case law is pretty clear that even if there's a default on default judgment, you still have to examine it to make sure the relief requested is appropriate. While that may happen a lot, that is, that does not, simply because it's unopposed does not mean you get the relief that you're requesting. Mr. Choi I would agree. I think they have to have substance. And for both of the cases, we did meet the requirements for 2004. So 2004 is pretty clear that I have the right to examine for anything related to administration of the state. Route 2004 doesn't state anything that changes that right or makes it expire or takes it away. So there's no timeline, there's no deadline, and there's no condition to losing the right to 2004. Basically it's, it's my right throughout the proceedings, as long as the main case is open, to be able to examine these things related to administration of the state. It doesn't have anything to do with another separate adversary proceeding or other separate motions as the other parties are trying to assert that I'm trying to get new evidence or all these things for other things. No, this is a standalone independent request for administration of the state. What are you building towards? What administration has yet to happen that you are concerned about? I'm concerned about the trustee's actions, about how it's affected my case and the conflict of interest between the trustee and my attorney and all the things on the record that I want to put. But that doesn't affect your case. That may affect you, but it to threaten my counsel in front of me. And what happened was they, at the 341 hearing, he said, Hey, Adam, you should settle this case. Chuck, you should advise your client to settle the case. We walked outside and the trustee told him, Hey, Chuck, this is a good case. I'm going to win. You should settle it. And by the way, you seem very busy. You should get these other cases settled or I'm not giving you any new business. So I asked Chuck, what was that all about? He said, trustee gives cases to attorneys that he likes. I have a case with him. It's Aloha Airlines. Chuck's firm earned over a million dollars in fees from that, from that one case. So the trustee's actions and his willingness to openly threaten my counsel with financial stuff has nothing really to do with, you know, any other thing, but it's super important to put on the record from my perspective. It's on the record. That's why I'm asking, what are you after? It's on the record. It's been investigated. It's been raised. It was never put on the record as far as I filed by U.S. Department of Justice findings, which had officially admonished the trustee for his behavior throughout the two investigations. He changed his story in the first one. He said, no, I didn't offer any new business or, or, you know, withholding new business. Then in the second letter, I presented him with the transcript from Chuck that said, yeah, he did say that. Then he changed his whole story. So that I want to get this on record on their own. But for what purpose, what do you want to happen as a result of that? I mean, getting it on record, I understand, but what, what becomes of that? What, what part of the administration does that affect? I don't think that the trustee is fit to serve as a trustee if he's willing to have open conflicts of interest, directing my counsel with financial disincentives and instruct people that they have to settle cases before they get any new business. He has no business administering to my state. And I need to show proof on the judge is not going to look at a U.S. Department of Justice letter and say, oh, this is part of my record. He, I want it on record. What happened? If there's nothing that he's hiding, just simply state, this is what happened. And then we, we move on. But the fact that the trustee can tell somebody, settle a case, tell somebody to settle other cases and threaten to withhold new business does not seem very like justice at all. I, I take the, the 2004 is an examination of administration to say, hey, there's a problem here. Let's go and look and examine and dig into it. The bankruptcy, excuse me, Mr. Lee, excuse me, Mr. Lee, excuse me, Mr. Lee, the bankruptcy court is not responsible to regulate the United States trustee's office, the United States trustee or his counsel. There are actions that you can proceed outside of bankruptcy to have those situations rectified. You, those remedies aren't effective, but what you're suggesting is you're using a rule that is related to your financial condition, to the administration of the bankruptcy case or to your discharge. All of those issues have already been resolved in your case. They've already been, they're already been finalized. Appeals have been taken and they've been determined. So what you're seeking to do has, we're not clear on how it relates to the administration of your bankruptcy case. That's not to say as judge Fraker was suggesting, you can have claims or issues with regard to how the U.S. trustee's office regulates trustees. But what the judge ruled in this case is not relevant to your case. I understand that. I was instructed by the U.S. Department of Justice to go and get this stuff on record. They told me, if you want to get it on a record, you want to remove him as a trustee, you got to go to the court. I go to the court, they tell me you got to go to the trustee's office. And what is so hard about a trustee saying whether or not he to withhold business from Mr. Choi, whose firm earned a million dollars from one case. And he has another huge case, the pension fund for the Hawaii State Teachers Union. And Chuck told me, you think I would give up my relationship with the trustee who gives me cases for you, a $5,000 client, you know? So I agree that, you know, it's not the bankruptcy court's job to administer to the trustee. But I think that it's the bankruptcy's job to court to have a fair person running the estate and to address issues of unethical behavior on the record. What's so hard about him answering whether or not he said those things? Why is that such a big deal? And the Root 2004 doesn't say, oh, because all these motions are done, then you lose that 2004, right? I can bring it up any time that I feel like that the estate is not being administered correctly. And if this guy is willing to do all these unethical things, he showed up at the deposition, refused to even say what his name was, or whether he's an attorney or whether he's a trustee, because he's a liar and he's unethical and he's corrupt. And I got him with a smoking gun. And now he changes his story. And what is so hard about just putting him on the road? Again, the issue that the court was confronted with is how does what you want to do affect the either your financial condition, your right to a discharge, or the administration of an estate which has been fully administered and there are no pending legal matters. There's a million dollars. There's a million dollars to be distributed. That's not true. This guy is threatening financial stuff with my attorney. He's in charge of a million dollars. That's an issue for the court, not for the U.S. trustee office. There's a million dollars being right now. I want to administer correctly. The incident at issue occurred years ago. Yeah, you're right. And I brought up I compelled it. I motioned for 2004 in my AP. The court said, no, you have to do it in the main case. So I did it in the main case. Then they denied my motion to compel. And you took his deposition, didn't you? You took the deposition because yeah, with three attorneys, he answered 500 questions with, I refuse to answer. The point that's been made is that in that situation, your remedy is to go to the court and say, make them answer these. I did. I did. Why? And what happened to that? Well, and then you appeal. They said he showed up. That's his right. And that's that. And so I think that's totally unfair. You know, why should a trustee be able to? Okay. I'm sorry. Go ahead. Well, you've got about five minutes left. You want to reserve the rest of your time? That's what I did. I did compel, you know, and then I filed it in the main case. I still have my right to 2004, whether or not all of these things happen. And if we discover new information about money, a million dollars of administration, then I feel like it's very important to put those things on the record. You know, so affected how Chuck represented me. He withdrew. It's affected how the trustee feels about me personally, just because I've complained about him, even though it's his actions. And so our request has nothing to do with the discharge, the adversary proceedings, nothing to do with any of that. I'm not, I didn't mention the discharge or AP or anything in my motion. They're putting words in your guys head saying that I'm thinking about this appeal or that. No, I'm talking about the main case and the administration of the money that's in my case and I'll hold the time. All right. Thank you. All right. Mr. Painter, Mr. Choi, you've got 15 minutes together. Who's going to go first? How are you going to divide your time? I will go first and I will try to address Mr. Lee and of course concerns, and then I will pass the baton to Mr. Choi to make any additional comments he deems appropriate. First, I would just like to Mr. Lee says he just wants the trustee to deny that he ever said the things that Mr. Lee alleges the trustee has denied it. He wrote Mr. Lee an email in response to Mr. Lee's email saying, I never said these things. There was only three parties to this conversation. The debtor, Mr. Lee, the trustee, Dane Field, and the debtor's counsel, Chuck Choi. Two of those people, the trustee and the debtor's counsel, say the argument, the conversation did not happen the way the debtor is describing. The debtor has no evidence that it happened the way he said. And it defies logic to think that the trustee would threaten to withhold business condition upon settlement of a potential adversarial proceeding. And there's no evidence to that. Mr. Lee made his complaints to the office of the United States trustee on two different occasions. The office of the United States trustee investigated the matter and found that the trustee did not do anything wrong. They specifically found that there's no evidence that the trustee made these kind of threats against Mr. Choi. Mr. Choi never, while he can speak for himself, but he stated that he never felt like the trustee threatened him. So the factual allegations upon which the debtor attempts to justify his Rule 204 examination, he hasn't established them. They just don't exist. With respect to whether or not the court abused its discretion in denying his Rule 204 examination, the court clearly did not err on the law. The court did not make any wrong inferences regarding the evidence. Initially, Mr. Lee never even defined the scope of the 204 examination. Subsequently, in argument, he said the scope had to do with his discharge, whether or not he was entitled to a discharge. Well, that was the subject of an adversarial proceeding. Judgment was entered against the debtor regarding the discharge. The debtor appealed, and the bankruptcy appellate panel affirmed the bankruptcy court's denial of his discharge. The record in this case is clear. The court has had a problem with Mr. Lee's credibility throughout these proceedings, even saying that, you know, the debtor was inclined to say anything that he thought would benefit himself. The case has, as far as like the administration of the case, the case has been fully administered other than distribution. If Mr. Lee is concerned about the distribution, he can make some kind of objection to the trustee's report when the trustee gets ready to disperse the proceeds. The 204 exam that Mr. Lee noticed several times and was rejected was because it had nothing to do with the administration of the case. He then noticed the trustee's deposition in an adversarial proceeding. That was a 363H adversarial proceeding to sell a non-debtor interest in estate property. Mr. Lee attempted to raise these issues, and the trustee was instructed by his counsel not to answer those questions. Do they have nothing to do with the sale of that property or the sale of the non-debtor party's interest in that property? Mr. Lee moved to compel the trustee's answers to his questions, and the court denied his motion to compel. He didn't appeal from that. Here we are, basically seven years after the fact. It's the trustee's view, and it's my view personally, that the debtor is raising these issues to try to delay the administration of this case. I think the record speaks very clearly to that fact. I will be glad to answer any questions that the panel has, and if not, then I would allow Mr. Choi to say what he has to say. If no questions, Judge Gannon or Judge Spraker. I just don't remember, Mr. Painter. Did the court indicate that it believed that the request should be denied also on the basis that it appeared to be harassment or no longer relevant to anything that was pending before the court? Actually, there were several motions for 204 exams. There was a motion. I filed an opposition. Then there was an amended motion, maybe the third amended motion. They finally got all, along with the motions from Mr. Choi, all resolved in one hearing. In response to, I believe it was the second 204 examination, I suggested that maybe the court might want to issue an order to show cause as to whether or not Mr. Lee was a vexatious litigant or not. Just because of the long history of this case. This is a, from my perspective, a kind of a run of the mill, chapter seven bankruptcy case. This particular appeal is the 16th out of 18 appeals generated. To me, that kind of smacked of vexatious litigation strategies. The bankruptcy court did not rule on that. Stated that Mr. Lee's conduct was very close, if not crossing the line, but that the court would rather the parties raise the vexatious litigant issue rather than the court raising it. Even though I'd requested in OSC the issue. Did that answer your question or? I think it did. Thank you. All right. Thank you. Mr. Choi, did you want to make any comments? Thank you. Good afternoon, your honors. I don't have any additional arguments or comments to make with regard to the briefing. I would like to correct one statement made by Mr. Lee earlier in his oral argument regarding the reason for my withdrawal in the main case and in the adversary. I did not withdraw because of anything the trustee did or said. I have nothing further, your honors. All right. Anything else, Mr. Painter? Just to follow up on Mr. Choi's comments in my briefs, I think I cited to the record where Mr. Choi withdrew in the adversarial proceeding because to continue representing the debtor in that would have imposed a financial burden on his law firm, presumably because the debtor wasn't paying him. And then he subsequently withdrew in the chapter seven, his counsel in the chapter seven case because the debtor chose to take actions to which Mr. Choi disagreed and would not go along with. And the orders and I believe the transcripts in those matters are part of the record. All right. Thank you. All right. Mr. Lee, I think you've got about four minutes left. You're muted. You're muted. Can't hear. Oh, thank you. You know, the court records show that Chuck stated that he's withdrawing because Mr. Lee's going in a different direction. It had nothing to do with fees. I only paid Chuck $5,000 for the bankruptcy fee and there's nothing to do with fees. There is no adversary proceeding going at the time. Mr. Painter's allegations completely incorrect. And what happened was I'm 30 years old. I have a house that's free and clear with a million dollars in assets. Chuck advises me to go file a chapter seven because I have the property in T.E. I lose a million dollars of free and clear assets on a home that had no debt on it. And so, you know, trying to paint me as somebody who wanted to get into this whole thing is just kind of not fair because, of course, I'm going to appeal when I'm losing a million dollars free and clear home based on that advice from Chuck, who happens to be represented by the trustee. And then he bails on me when he puts my house up at risk. You know, so I have no choice but to appeal. I lost everything, including my home, my wife, everything. And so, you know, I'm not trying to be vexatious, but I'm not feeling like things were on the up and up. And, you know, there is proof that this happened. Chuck, I submitted the transcript that said Chuck said, I do recall the trustee saying that if you don't settle these cases, I'm not giving you any new business. And to me, that establishes three things. One, trustee talked about settling my case. Nobody disputes that. Two, he said that he's not going to give any new business unless cases were settled. And the trustee tries to play these words, James, like, well, I was talking about the case that Chuck represents trustee, not your case. It was in the same exact conversation. He said, settle your case. I'm not giving you other cases until you get these other cases settled. So he's combining all these things into conflict of interest. He represents Chuck. Chuck represents trustee. Chuck represents me. And he's threatening him. So it was on the record that Chuck admitted that the trustee talked about business. The Department of Justice sent a letter saying, hey, Mr. Lee, he wasn't talking about your case, OK? He did say, settle your case, which is fine. He did say, settle these other cases. And he did say, I'm not giving you business. But he didn't say, I'm not giving you cases for settling your case. That was never my allegation. My allegation was a trustee who has a million dollars at hand should not be talking about settling my case, settling another case, a new business in the same minute conversation. That's completely improper. And for this guy to be a trustee in that position and nobody to question him and not think that this is anything of substance is completely ridiculous. The court should want to get to the bottom of it if they want to know if the trustee is a straight guy or not. What is so hard about him saying, did I offer new business? Did I talk about their case? Did I talk about my case? To me, that's crooked. That's corrupt. This is the only a trustee in this bankruptcy. He's the only kind of trustee who earns a commission on stuff. So he earns money, a commission on it, a percentage. So of course, it's in his interest to settle, to liquidate, to get all these properties that are free and clear. And my request is true of every trustee. Well, I don't know. That's the system. The bankruptcy trustee in Chapter 7 gets a commission on what he collects. I'm not trying to change the system, but it's the fact that he does earn money. But Mr. Lee, in every instance that you challenged everything the trustee did, you lost. And in every instance where you appealed that decision by the bankruptcy court, it was affirmed. So to go back in now and say you have a right to reinvestigate all these claims, everything you've raised about this shouldn't have happened and that shouldn't have happened has been denied relief at the bankruptcy court level and affirmed either by the BAP or by the Ninth Circuit. The bankruptcy court never denied. They denied my right to even have a 2004. I'm talking about the transfer that you suggested the trustee shouldn't have been able to liquidate your property was determined by the bankruptcy. I'm not arguing that. That's your discharge denial. Your denial of discharge. Again, you appealed saying the trustee was unfair to issue. The trustee's conduct is a separate issue than my discharge. I don't even know. It's all you keep saying it's all related to your case. It's a separate issue, but it's all related to your. Right. Exactly. It's administration to the case. It's not about my discharge. My discharge is my conduct. I realized that I'm not asking about what I did or what I'm saying. Is it right for the trustee to be able to talk about my case, other cases, and he has the power to give these massive $1 million fee cases to other firms? You guys don't have a problem with that? Then fine. Whatever. The whole system's corrupt. I have a problem with it. I have a problem with him having a case that he earns a million dollars and then him talking in front of me and threatening to withhold your business. So it's up to you guys if you think that's proper or not. I think it should be put on the record. It has to do with administration of the state, which is a very broad trustee has to be number one ethical. If he's not ethical, he can't administer the state. Maybe we disagree on that. You guys decide whether or not it's nothing to do with my discharge, my AP, me losing 16 out of 18, me losing my home. That's all water under the bridge. What I'm talking about is this specific incident being on the record under testimony. It never has. It never has been denied. It's never been looked at. Trustee's actions deserve to be on the record. All right. Thank you very much. Chuck can easily say that this happened. Chuck can say on the record, yes, he talked about settling cases for new business. All right. Mr. Choi, you're past your time. So thank you very much for your argument. This matter will be submitted. Thank you, your honors. All right. And that's the last matter. So I believe that we are concluded. Thank you. Thank you all. Thank you. Thank you very much. Thank you for your arguments.
judges: Brand, Spraker, Gan